**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3762-19

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ANGELA M. BODEN,
a/k/a ANGEL BODEN,
ANGEL SCOTTI, ANGELA
M. SCOTTI, and ANGELA
M. SCOTTI-BODEN,

     Defendant-Appellant.

_____

Submitted April 21, 2021 – Decided May 17, 2021

Before Judges Sumners and Geiger.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 17-02-0232.

Joseph E. Krakora, Public Defender, attorney for appellant (Abby P. Schwartz, Designated Counsel, on the brief).

Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney for respondent (Monica do

Outeiro, Assistant Prosecutor, of counsel and on the brief; Alecia Woodard, Legal Assistant, on the brief).

PER CURIAM

Defendant Angela M. Boden appeals from a February 20, 2020 order denying her petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm substantially for the reasons expressed by Judge Paul X. Escandon in his comprehensive written opinion.

In August and September 2016, detectives from the Monmouth County Prosecutor's Office made three undercover buys of controlled dangerous substances (CDS) from defendant. During a subsequent execution of a search warrant of defendant's residence, police found CDS, a digital scale, and $799 in U.S. currency.

In February 2017, a Monmouth County grand jury returned Indictment No. 17-02-0232, which charged defendant with the following twenty-three counts: six counts of third-degree possession of CDS, N.J.S.A. 2C:35-10(a)(1); four counts of third-degree possession of CDS with intent to distribute, N.J.S.A. 2C:35-5(b)(3); four counts of third-degree distribution of CDS, N.J.S.A. 2C:35-5(b)(3); four counts of second-degree possession of CDS with intent to distribute within 500 feet of a public park, N.J.S.A. 2C:35-7.1; four counts of second-degree distribution of CDS within 500 feet of a public park, N.J.S.A. 2C:35-7.1;

2

and one count of third-degree conspiracy to distribute CDS, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:35-5(b)(3).

Defendant was separately charged in Accusation No. 17-12-1693 with third-degree possession of CDS, N.J.S.A. 2C:35-10(a)(1) (count one); third-degree possession of CDS with intent to distribute, N.J.S.A. 2C:35-5(b)(3) (count two); and second-degree possession of CDS with intent to distribute within 500 feet of a public park, N.J.S.A. 2C:35-7.1 (count three). In addition, defendant was charged with a total of thirteen counts of various CDS-related offenses in Indictment Nos. 16-09-1589 and 17-03-0339.

On July 7, 2017, defendant entered into a plea agreement with the State to plead guilty to two counts of third-degree distribution of CDS (counts nine and fourteen) of Indictment No. 17-02-0232, in exchange for a recommended sentence of a six-year prison term with a three-year period of parole ineligibility, and dismissal of the remaining counts of Indictment No. 17-02-0232 and all the counts of Indictment Nos. 16-09-1589 and 17-03-0339. Defendant reserved the right to argue for a five-year term with a three-year period of parole ineligibility.

On July 7, 2017, defendant pled guilty to counts nine and fourteen in accordance with the plea agreement. The terms of the plea agreement were read

on the record. The court then engaged in the following plea colloquy with defendant:

Q. Do you have a copy of the plea agreement . . . ?

A. Yes.

Q. Did you go over that with [your attorney]?

A. Yes.

Q. Were you able to read and understand everything in the agreement?

A Yes.

Q Now in the lower right-hand corner of each one of those pages, there are initials there. Did you place them there?

A. Yes, I did.

. . . .

Q. Now on the second to the last page which is actually page [five of five] of this plea agreement, . . . [i]s that your signature?

A. Yes.

Q. Prior to initially signing pages did you review, understand and answer the questions in this document honestly?

A. Yes.

4

Q. Now it's my understanding as it's set forth on page [one] of the agreement, you're going to be pleading guilty to [c]ount [nine] of Indictment 17-02-0232, which alleges distribution of CDS. That is a third-degree offense. The maximum statutory fines and penalties I can impose for that would be five years in jail, a $35,000 fine, and a $50 VCCO assessment.

And that you'll also be pleading guilty of [c]ount [fourteen] of that indictment which again alleges distribution of CDS, third[-]degree offense. The maximum fines and penalties for that would be five years in jail, a $35,000 fine, and a $50 VCCO assessment.

So you're looking potentially at an aggregate maximum sentence of ten years in jail, a $70,000 fine, and a $100 VCCO assessment. Do you understand the charges?

A. Yes, sir.

Q. Now in consideration for your plea, and this is set forth on page [three] of the agreement, specifically paragraph [twelve], the State is going to be moving to dismiss all the remaining counts of Indictment 17-02-[0232], together with all the related complaints and motor vehicle tickets.

And also with regards to Indictment 16-09-1589, all of the counts and all related motor vehicle tickets. But that dismissal, however, is contingent with your co-defendant pleading guilty, that's Mr. Chirachello, to a third[-]degree possession of CDS with intent to distribute. If he doesn't come in and plead to that, you may still have to come back and resolve that case. You understand that, ma'am?

5

A. Yes, sir.

Q. Now also the State will be moving to dismiss on Indictment 17-03-0339 all counts and all related disorderly persons complaints and motor vehicle tickets. Do you understand that, ma'am?

A. Yes.

Q. As set forth in paragraph [thirteen] the State will be recommending a sentence of six years New Jersey State Prison with a mandatory, with a period of parole ineligibility of three years. And those terms on counts nine and [fourteen] will run concurrent to one another.

And as set forth in paragraph [twenty-one], defense is going to be asking on your behalf a sentence of no more than five years New Jersey State Prison with a three[-]year period of parole ineligibility.

They can be asking for that, and nothing has been promised with regards to that. But in paragraph [twenty-one] on your behalf they've reserved the right to argue for that. Do you understand that, ma'am?

A. Yes, sir.

. . . .

Q. Now is this the total plea agreement between you and the State?

A. Yes.

Q. Is this the plea that you want me to accept?

A. Yes.

6

Q. Has anyone made any threats or undisclosed promise to get you to enter into this plea agreement?

A. No.

Q. Are you pleading guilty of your own free will because you are, in fact, guilty?

A. Yes.

Q. Has [your attorney] answered all your questions, and are you satisfied with her representation?

A. Yes.

Q. Do you need any additional time to speak with her?

A. No.

Q. And do you understand ma'am that if I accept this plea agreement today, I will not give it back to you even if you change your mind. ·Knowing that, do you still wish to plead guilty?

A. Yes.

The court found that defendant provided an adequate factual basis for the guilty plea and that she "fully understands the nature of the charge and the consequence of the plea." It further found that defendant "entered the plea knowing[ly] and voluntarily with the assistance of competent [c]ounsel."

Defendant moved for admission into Drug Court. The State objected, contending she was statutorily ineligible for special probation because she had

7

been previously convicted of distribution of CDS and was subject to a presumption of an extended term and a minimum period of incarceration. On November 29, 2017, the trial court denied her application, finding defendant was statutorily ineligible for special probation.

On December 11, 2017, defendant waived her right to a grand jury presentment and prosecution by indictment and pled guilty to count two of Accusation No. 17-12-1693 (third-degree possession of CDS with intent to distribute), in exchange for a recommended sentence of a six-year term with a three-year period of parole ineligibility pursuant to the <u>Brimage</u> Guidelines,[1] to run concurrently to her sentence under Indictment No. 17-02-0232, and dismissal of counts one and three of the Accusation.

On January 26, 2018, defendant was sentenced on count two of the Accusation and counts nine and fourteen of Indictment No. 17-02-0232 in accordance with the plea agreements to an aggregate six-year term with three years of parole ineligibility.

Defendant did not appeal her conviction or move to withdraw her guilty plea. Instead, she appealed her sentence, claiming it was excessive and that a

---

[1] Revised Attorney General Guidelines for Negotiating Cases Under N.J.S.A. 2C:35-12 (July 15, 2004), promulgated pursuant to <u>State v. Brimage</u>, 153 N.J. 1 (1998).

five-year base term should have been imposed. Appellate counsel acknowledged, however, that the three-year period of parole ineligibility was mandatory. The appeal was heard on a sentencing calendar pursuant to Rule 2:9-11. On April 10, 2019, we affirmed her sentence, finding it was "not manifestly excessive or unduly punitive and does not constitute an abuse of discretion."

In the meantime, on March 20, 2019, defendant filed a pro se PCR petition as to Indictment No. 17-02-0232 only, claiming ineffectiveness of trial counsel. She alleged that her sentence "was [i]nconsistent [with the] court transcripts" and that she was told by trial counsel that she "was signing for something different than what [she] received." She also cryptically stated, "[d]enial of all programs" without any explanation of what she was referring to. She did not claim that appellate counsel was ineffective.

Counsel was appointed to represent defendant and submitted a brief in support of the petition. Counsel argued trial counsel "undermined the plea process" by not giving defendant "complete information on the possible plea and consequences of a sentence once convicted. As a result of this failure, defendant plead[ed] guilty and received a sentence different from what she reasonably expected[,] which was less than a six[-]year term."

Defendant further argued that she was working undercover as an FBI informant, but trial counsel did not contact the FBI to confirm this arrangement. Defendant contends she believed that she "would be offered a more favorable plea and sentence" due to her cooperation.

Judge Escandon heard oral argument on February 19, 2020. PCR counsel asserted that defendant "did not have sufficient time to speak with her attorney, and she thought . . . that he was going to speak to the FBI agents" about her cooperation "to help regarding her sentence." Defendant claimed it did not appear trial counsel made any effort to contact the FBI agents. PCR counsel indicated, however, that when he spoke to one of the FBI agents, the agent told him that "he did not particularly want to get involved in this matter." Defendant contended that trial counsel "did not speak to her enough, did not educate her regarding the terms of the plea."

Judge Escandon issued a February 20, 2020 order and accompanying sixteen-page opinion denying the petition without an evidentiary hearing. The opinion surveyed the applicable legal principles under Strickland v. Washington, 466 U.S. 668 (1984), and its progeny, and the requirement that a PCR petitioner must establish a prima facie case of ineffective assistance of

10

counsel to be entitled to an evidentiary hearing. We need not repeat those well-established principles in this opinion.

The judge found that defendant failed to present a prima facie case of ineffective assistance of counsel. He explained:

> Defendant has failed to show any evidence that (1) trial counsel was deficient and (2) that the deficiency prejudiced her defense, as required by <u>Strickland</u>. First, defendant engaged in colloquy with the [c]ourt indicating that plea counsel explained the consequences of the plea, that she fully understood the plea, and that she was satisfied with plea counsel's representations. Second, defendant has failed to show how plea counsel was deficient for failing to present evidence of cooperation with the FBI, and further, if counsel was deficient, how that deficiency prejudiced her defense.

Based on those findings, the judge determined that defendant was not entitled to an evidentiary hearing. This appeal followed.

Defendant argues:

> THE NATURE OF THE PLEA BARGAIN WAS UNCLEAR TO DEFENDANT, DUE TO COUNSEL NOT EXPLAINING IT TO HER AND NOT PLACING IT ON THE RECORD, RENDERING HER PLEA UNKNOWING AND INVOLUNTARY. FOR THIS REASON HER PLEA MUST BE VACATED OR REMANDED FOR AN EVIDENTIARY HEARING AS INEFFECTIVE ASSISTANCE OF COUNSEL VIOLATED HER RIGHT TO DUE PROCESS AND A FAIR TRIAL.

> A. Introduction.

B. Faults in the Plea Proceedings.

C. Defendant Was Misadvised of the
Consequences of Her Guilty Plea.

D. The Cumulative Error Requires a Remand and
an Evidentiary Hearing.

We find no merit in these arguments and affirm substantially for the reasons expressed by Judge Escandon in his well-reasoned opinion. We add the following brief comments.

The plea colloquy with the trial court belies defendant's claims that she did not understand the terms of the plea agreement, including the recommended sentence. It also belies her claim that she did not receive complete information regarding the plea agreement and the consequences of her sentence once convicted. On the contrary, the colloquy demonstrates that defendant read and fully understood the terms of the plea agreement, answered the questions on the plea form truthfully, reviewed the plea agreement with counsel, and was satisfied with her counsel. The colloquy reveals that counsel answered all of her questions and that she did not need additional time to discuss the case with counsel. The colloquy also demonstrates that while she understood counsel would argue for a five-year base term, no promises had been made to her in that regard.

12

Judge Escandon's findings are fully supported by the record. His legal analysis and conclusions are consonant with applicable law. Defendant did not present a prima facie case of ineffective assistance of counsel. She did not show that trial counsel's performance was deficient or how the alleged deficiency prejudiced her defense. The record reveals that trial counsel was able to negotiate a very favorable plea agreement that resulted in concurrent sentences and the dismissal of the vast majority of the charges defendant faced. The judge properly dismissed defendant's petition without conducting an evidentiary hearing.

Defendant's arguments lack sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION